**STANAT MANUFACTURING COMPANY, Inc., Plaintiff,**

v.

**IMPERIAL METAL FINISHING CO., Inc., Defendant.**

No. 70–C–1404.

United States District Court, E. D. New York.

April 8, 1971.

---

Feigenbaum & Pinks, Melville, N. Y., for plaintiff; I. Leonard Feigenbaum, Melville, N. Y., of counsel.

Booth, Lipton & Lipton, New York City, for defendant Hurley R. Talpis, Los Angeles, Cal., of counsel.

WEINSTEIN, District Judge.

$85,145.22 is sought for machinery and parts delivered and services rendered to defendant. Defendant moves to dismiss for lack of personal jurisdiction and, in the alternative, for change of venue to Southern California. For the reasons stated below this action must be dismissed.

I

There is very little dispute as to the facts. For purposes of this preliminary motion any dispute is resolved in favor of the plaintiff.

Plaintiff, a New York corporation, designs, manufactures and sells metal processing machinery. Defendant, a processor and finisher of metal products, has its only place of business in Los Angeles, California; it is not licensed to do business, nor does it carry on any business, in New York.

In 1968 defendant ordered from plaintiff a machine to be used in Los Angeles to slit rolls of flat metal. The negotiations for the sale began in the Spring of 1968 between defendant and Montague-Harris and Company, a California corporation acting as the agent of plaintiff. All the negotiations were carried on in California; the plaintiff's proposal was accepted by defendant in California; and the security agreement was signed by defendant in California. The machinery was delivered and installed in defendant's California plant by plaintiff's employees.

Plaintiff alleges that after the original contract was signed, but before ship-ment of the machinery, defendant placed a telephone call in California to plaintiff in New York and obtained a modification of the terms of payment in the contract. Instead of payment of sixty percent of the purchase price prior to shipment of the machinery, twenty percent was to be paid prior to shipment and forty percent was to be paid immediately upon delivery.

The agreement was breached. Though the machine was delivered and installed, eighty percent of the purchase price as well as the agreed amount to be paid for services rendered in installation and start up remain to be paid.

It is plaintiff's theory that at the time of the renegotiation of the payment terms defendant never intended to pay the forty percent upon delivery and, in effect, committed a fraud by inducing shipment on the basis of a promise never intended to be kept. Plaintiff contends that the machinery would never have been shipped without the payment required by the original contract were it not for the defendant's fraudulent inducement.

II

To support its claim of jurisdiction, plaintiff relies upon Section 302(a) (2) of the New York Civil Procedure Laws and Rules dealing with tortious acts within the state. It reads in pertinent part:

"As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nondomiciliary * * * who in person or through an agent:

* * * * * *

2. commits a tortious act within the state * * *."

This action sounds in contract. Permitting plaintiff to convert the case into a tort action for jurisdictional purposes would frustrate the design of Section 302 which differentiates between tort and other actions. *Compare* CPLR 302(a) (2) (3) *with* CPLR 302(a) (1) (4).

■ Forms of action and procedural distinctions based upon them have much less importance than they once did. Nevertheless, where a statute distinguishes between tort and contract theories and substantial consequences flow from characterization of a case as one or the other, the courts have no right to treat the terms interchangeably.

■ If a plaintiff could, merely by alleging that a contracting party never intended to fulfill his promise, create a tortious action in fraud, there would be no effective way of preventing almost every contract case from being converted to a tort for jurisdictional purposes. *Cf.* Old Westbury Golf & Country Club, Inc. v. Mitchell, 44 Misc.2d 687, 254 N. Y.S.2d 679, 682 (Sup.Ct.1964), aff'd, 24 A.D.2d 636, 262 N.Y.S.2d 438 (2d Dep't 1965), aff'd, 18 N.Y.2d 670, 273 N.Y.S. 2d 418, 219 N.E.2d 868 (1966). As Judge Pittoni put the matter in rejecting jurisdiction in a case comparable to the one before us, "this contention strains the language of CPLR § 302(a), subd. 2 beyond reason and lacks merit." Old Westbury Golf & Country Club, Inc. v. Mitchell, 44 Misc.2d 687, 254 N.Y.S.2d 679, 682 (Sup.Ct.1964), aff'd, 24 A.D.2d 636, 262 N.Y.S.2d 438 (2d Dep't 1965), aff'd, 18 N.Y.2d 670, 273 N.Y.S.2d 418, 219 N.E.2d 868 (1966). *But see* Hoard v. U. S. Paint, Lacquer and Chem. Co., 44 Misc.2d 72, 253 N.Y.S.2d 89 (Sup.Ct. 1964).

The plaintiff's lawyer almost always alleges fraud in good faith; for, by the time of the falling out between contracting parties, a prospective plaintiff will usually have some grounds for believing that his opponent never intended to deal with him faithfully. Protestations of the defendant will be met by the argument that they are self-serving. Because it would make little sense to try this threshold issue separately, the allegation of fraud would have to be assumed to be true in every case.

Accepting plaintiff's theory would have the effect of an unwarranted and unintended extension of "long arm" jurisdiction to almost any contract action where plaintiff was a New York domiciliary. Whether or not the reach would be unconstitutional, it would be contrary to legislative design as revealed in CPLR 302. *Cf.* American Eutectic Welding Alloys Sales Co., Inc. v. Dytron Alloys Corp., 439 F.2d 428 (2d Cir. 1971).

Plaintiff's reliance on Karsh v. Karsh, 62 Misc.2d 783, 310 N.Y.S.2d 578 (Sup. Ct.1970), is misplaced. In *Karsh*, an action based upon a son's inducing his father to transfer his bank accounts on a false representation as to how they would be used, the complaint was permeated with classic fraud—a tort. Except in unusual cases, simple contract actions of the kind before us cannot be treated as torts under New York's jurisdictional provision.

In this case the only contact with New York was one interstate phone call. Defendant's employees did not come to New York in connection with this transaction on any occasion. All of defendant's alleged fraudulent actions even if we assume they occurred—took place in California. In "common sense and reality" a tortious act was not committed in New York by defendant. Kramer v. Vogl, 17 N.Y.2d 29, 31, 267 N.Y.S.2d 900, 903, 215 N.E.2d 159 (1966).

■ A commercial defendant such as the one before us cannot be drawn into the State of New York by so insubstantial a thread as a single interstate telephone call. *Cf.* Parke-Bernet Galleries, Inc. v. Franklyn, 26 N.Y.2d 13, 308 N. Y.S.2d 337, 256 N.E.2d 506 (1970); M. Katz & Son Billiard Products, Inc. v. G. Correale & Sons, Inc., 26 A.D.2d 52, 270 N.Y.S.2d 672 (1st Dep't 1966), aff'd, 20 N.Y.2d 903, 285 N.Y.S. 871, 232 N.E.2d 864 (1967) (mem.); American Eutectic Welding Alloys Sales Co., Inc. v. Dytron Alloys Corp., 439 F.2d 428 (2d Cir. 1971). McLaughlin, New York Practice, 22 Syracuse Law Review 55, 69 (1971).

Since this Court has not obtained jurisdiction, the action must be dismissed.

So ordered.