KHALAF v BANKERS & SHIPPERS INSURANCE COMPANY

Docket No. 57363. Argued June 10, 1976 (Calendar No. 12).—Decided
    December 27, 1978.

    Niam Khalaf and Almaza Khalaf brought a complaint against
    Bankers & Shippers Insurance Company and James Dullard,
    an Illinois insurance agent, for damages arising out of the
    defendants' failure to provide proper insurance coverage for a
    third party, National Machine Servicing Company, Inc., against
    whom plaintiffs had taken a judgment. The judgment is unsat-
    isfied. National Machine, an Illinois corporation, negligently
    repaired a machine which then caused physical injury to Niam
    Khalaf in Michigan. The defendant insurance agent obtained
    insurance covering National Machine from a New York insur-
    ance company, has never been a resident of Michigan, and has
    never conducted any business in Michigan. The Wayne Circuit
    Court, Roland L. Olzark, J., quashed service of process on
    defendant Dullard for lack of jurisdiction under the long-arm
    statute. The Court of Appeals, Danhof, P.J., and R. B. Burns
    and R. M. Maher, JJ., affirmed (Docket No. 21308). Plaintiffs
    appeal. *Held:*

        1. There were less than the "minimum contacts" with Michi-
    gan required to satisfy Federal constitutional requirements,
    and this state cannot exercise jurisdiction over Dullard.

        2. The plaintiffs' substantive theory is that an insurance

REFERENCES FOR POINTS IN HEADNOTES

[1-10] 20 Am Jur 2d, Courts §§ 142-146.

    Construction and application, as to isolated acts or transactions, of
        state statutes or rules of court predicating in personam jurisdic-
        tion over nonresidents or foreign corporations upon the doing of
        an act or upon doing or transacting business or "any" business,
        within the state. 27 ALR3d 397.

    Validity, as a matter of due process, of state statutes or rules of
        court conferring in personam jurisdiction over nonresidents or
        foreign corporations on the basis of isolated business transactions
        within the state. 20 ALR3d 1201.

    Construction and application of state statutes or rules of court
        predicating in personam jurisdiction over nonresidents or foreign
        corporations on making or performing a contract within the
        state. 23 ALR3d 551.

agent is subject to liability in an "action for tort" to an unpaid judgment creditor for negligent failure to procure insurance which would have provided a source of recovery: they were third-party beneficiaries of the contract by which the agent agreed to procure insurance for the judgment debtor out of which they could have recovered, and the agent owed them a duty to perform the contract with due care, so that an action may be maintained in tort for negligent performance. They assert that the agent caused "consequences to occur" in Michigan which gave rise to an "action for tort", and therefore the court may exercise long-arm jurisdiction over the agent pursuant to statute. Because of the resolution of the due-process constitutional issue, it is not necessary to decide whether an action for negligence which sounds in contract is an "action for tort" or whether the non-collectibility of a judgment is a "consequence" which "occur[s] in the state". Proof alone that a nonresident caused an effect in Michigan that was foreseeable does not establish a relationship to Michigan such as to make it fair and reasonable to subject the nonresident to jurisdiction.

3. The governing standard under the Due Process Clause, in the context of long-arm jurisdiction, is whether the defendant has such "minimum contacts" with the forum that maintenance of the action does not offend traditional notions of fair play and substantial justice. General fairness to the defendant is the issue to be determined in each case. It is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. The defendant's activities will ordinarily be such that he will have reason to expect to be haled before the forum court. A factor is the state's interest in providing effective means of redress for its residents.

4. Causing a foreseeable effect to occur in the state may allow a state to exercise judicial jurisdiction over the defendant. Whether the state may do so depends upon a variety of factors, including the extent of the relationship of the state to the defendant and the plaintiff, the nature and quality of the effect, and the degree of inconvenience which would result to the defendant from being forced to stand suit in the state on the particular cause of action. There is no evidence that Dullard, an insurance agent in Illinois, ever transacted business in Michigan, nor that he ever procured insurance for persons or property in Michigan or covering risks of loss extant in Michigan at the time the policy was written. Nor is there evidence that his customer National ever did business in Michigan apart

from the activities that occasioned the plaintiffs' loss. Policies of insurance generally provide coverage beyond the jurisdiction in which the insured's activities are centered. Such extended territorial coverage may be and frequently is provided without focus on or identification of any particular out-of-state activity of the insured and without additional or identified premium charge at the time the policy is written. To hold that because of such extended territorial coverage an insurance agent has caused a foreseeable effect wherever the insured may travel justifying the exercise of long-arm jurisdiction would be to subject insurance agents, however small and localized their operations, to the jurisdiction of any state to which the insured might travel. The state is properly concerned with providing effective means of redress for its residents. In this case however, there would be no need to transport witnesses from Michigan to Illinois; they are more likely to be located in Illinois. The quality and nature of the effect in Michigan, inability to collect a judgment, does not pose the risk of physical harm presented by driving an automobile or distributing manufactured products in this state.

5. An essential consideration is whether the defendant has "purposefully availed" himself of the privilege of conducting his activities in Michigan. Insurance agents, unlike insurers, do not generally seek to expand their business into other states. They find themselves writing insurance for risks in other states as a result of the expansion of their customers' businesses, and thus become involved in another state not because of their own purpose but because of their customers' purpose. There is a substantial difference between agreeing, as does an insurance agent, to procure someone who will act in Michigan and agreeing, as does an insurer, to act in Michigan. The effect of nonperformance may, indeed, be consequences in Michigan affecting in the same way the insured or an injured person, but foreseeable effects alone are not purposeful availment. Out-of-state effects are but an incident of a localized business which does not depend on multi-state distribution to generate volume. A different question might be presented on evidence that the agent agreed to insure specific risks in the forum state or that he transacted substantial business for insureds located in the state, but such evidence is altogether lacking in this case. On this record, Michigan is not a fair forum. It would not be reasonable, in the context of our Federal system of government, to require Dullard to defend the plaintiffs' claims in Michigan.

Justice Williams, joined by Chief Justice Kavanagh, concur-

red specially in the result and with the thrust of the Court's opinion, but not with the breadth of its analysis. The Court would do well in the fast-moving field of long-arm jurisdiction to proceed on a case-by-case basis. In this case, the defendant insurance agent was aware that the machine servicing corporation had transacted business in the adjoining state of Wisconsin. However, there was nothing on the record to show that the machine servicing corporation had transacted, or was transacting, business in Michigan, or in any other state, nor was there any record evidence that defendant insurance agent was conducting any business in Michigan or in any other state. On this record, it is difficult to find that there was either a "stream of commerce", or a "foreseeable" or a "purposeful availment" relationship between defendant insurance agent and the accident in Michigan. As a consequence, the Michigan long-arm statute has no application. On the other hand, it is not difficult to envision that the change of one or two significant facts would change this conclusion. For example, it would have been important if the record had shown that the Illinois insurance agent could reasonably have foreseen that his client was about to conduct operations in Michigan. It would have been equally important if it were on record that either the client or the insurance agent was doing a nationwide business, without necessarily specifying Michigan.

Affirmed.

62 Mich App 678; 233 NW2d 696 (1975) affirmed.

OPINION OF THE COURT

1. COURTS — JURISDICTION — LONG-ARM STATUTE — FORESEEABLE EFFECT.

Proof alone that a nonresident caused an effect in Michigan that was foreseeable does not establish a relationship to Michigan such as to make it fair and reasonable to subject the nonresident to jurisdiction (US Const, Am XIV; MCL 600.705; MSA 27A.705).

2. COURTS — JURISDICTION — LONG-ARM STATUTE — DUE PROCESS — MINIMUM CONTACTS.

In the context of long-arm jurisdiction, the question under the Due Process Clause is whether the defendant has such "minimum contacts" with the forum that maintenance of the action does not offend traditional notions of fair play and substantial justice (US Const, Am XIV; MCL 600.705; MSA 27A.705).

3. COURTS — JURISDICTION — LONG-ARM STATUTE — DUE PROCESS —
   MINIMUM CONTACTS.

For a state to have long-arm jurisdiction over a defendant, it is
essential in each case that there be some act by which the
defendant purposefully avails himself of the privilege of con-
ducting activities within the forum state, thus invoking the
benefits and protections of its laws (US Const, Am XIV; MCL
600.705; MSA 27A.705).

4. COURTS — JURISDICTION — LONG-ARM STATUTE — DUE PROCESS —
   "EFFECTS".

The rule of law by which a state has power to exercise judicial
jurisdiction over an individual who causes effects in the state
by an act done elsewhere with respect to any cause of action
arising from those effects was intended to reach wrongful
activity outside the state causing injury within the state, or
commercial activity affecting state residents, but recognizes
that, even in such cases, there might be circumstances that
would render unreasonable the assertion of jurisdiction over
the nonresident defendant (US Const, Am XIV).

5. COURTS — JURISDICTION — LONG-ARM STATUTE — INSURANCE —
   FORESEEABLE EFFECTS.

To hold that because of extended territorial coverage of an
insurance policy the agent who procured the policy has caused
a foreseeable effect wherever the insured may travel justifying
the exercise of long-arm jurisdiction would be to subject insur-
ance agents, however small and localized their operations, to
the jurisdiction of any state to which an insured might travel.

6. COURTS — JURISDICTION — LONG-ARM STATUTE — "EFFECTS" —
   NATURE AND QUALITY.

In an action in Michigan against a nonresident insurance agent
by a judgment creditor of the insured for negligent procure-
ment of insurance, the nature and quality of the effect in
Michigan relied on by the plaintiff for long-arm jurisdiction,
inability to collect a judgment, does not pose the risk of
physical harm presented by driving an automobile or distribut-
ing manufactured products in the state (MCL 600.705; MSA
27A.705).

7. COURTS — JURISDICTION — LONG-ARM STATUTE — FORESEEABLE
   EFFECTS.

Whether a nonresident defendant caused foreseeable effects to
occur in a state is a factor in deciding whether the state may,

consistent with due process, subject the defendant to its judicial jurisdiction, but the essential consideration is whether the defendant has "purposefully availed" himself of the privilege of conducting activities in the state.

8. COURTS — JURISDICTION — LONG-ARM STATUTE — PURPOSEFUL AVAILMENT.

A "purposeful availment" by a nonresident of the privilege of conducting activities in Michigan sufficient to justify the state in exercising long-arm jurisdiction over him is something akin either to a deliberate undertaking to do or cause an act or thing to be done in Michigan or conduct which can properly be regarded as a prime generating cause of the effects resulting in Michigan, something more than a passive availment of Michigan opportunities (MCL 600.705; MSA 27A.705).

9. COURTS — JURISDICTION — LONG-ARM STATUTE — INSURANCE AGENTS.

Michigan is not a fair forum for an action against a Chicago insurance agent, and it would not be reasonable, in the context of the Federal system of government, to require the insurance agent to defend a claim in Michigan by a judgment creditor of an uncollectible insured for negligent procurement of insurance where there is no evidence that he transacted business in Michigan at any time, nor that he ever procured insurance for persons or property in Michigan or covering risks of loss extant in Michigan at the time the policy was written, nor that his customer, the insured, apart from the activities that occasioned the plaintiff's loss, ever did business in Michigan; there is no evidence that the agent has purposefully availed himself of the privilege of conducting activity in Michigan (MCL 600.705; MSA 27A.705).

CONCURRING OPINION BY WILLIAMS, J.

10. COURTS — JURISDICTION — LONG-ARM STATUTE — COMMON LAW.

*The courts would do well in the fast-moving field of long-arm jurisdiction to proceed on a case-by-case basis; it is not difficult to envision that the change of one or two significant facts on the record would change the conclusion that a nonresident defendant was not properly subjected to the long-arm jurisdiction of Michigan where there was no showing that there was either a stream of commerce, or a foreseeable or purposeful availment relationship between the defendant and the injury in Michigan (US Const, Am XIV; MCL 600.705; MSA 27A.705).*

*Goodman, Eden, Millender, Goodman & Bedrosian* (by *Robert A. Koory* and *Paul A. Rosen)* for plaintiffs.

*Sommers, Schwartz, Silver, Schwartz & Tyler, P.C.,* for defendant Dullard.

LEVIN, J. An Illinois corporation committed a tortious act in Michigan and its insurer refused to defend against an action brought by Michigan residents or to satisfy a judgment.

This is an action by the Michigan residents against an Illinois insurance agent for negligence (errors and omissions) in procuring insurance for the corporation. The issue is whether, under the long-arm statute,[1] a Michigan court may exercise

[1] "The existence of any of the following relationships between an individual or his agent and the state shall constitute a sufficient basis of jurisdiction to enable a court of record of this state to exercise limited personal jurisdiction over the individual and to enable the court to render personal judgments against the individual or his representative arising out of an act which creates any of the following relationships:

"(1) The transaction of any business within the state.

"(2) The doing or causing an act to be done, or consequences to occur, in the state resulting in an action for tort.

"(3) The ownership, use, or possession of real or tangible personal property situated within the state.

"(4) Contracting to insure a person, property, or risk located within this state at the time of contracting.

"(5) Entering into a contract for services to be rendered or for materials to be furnished in the state by the defendant.

"(6) Acting as a director, manager, trustee, or other officer of a corporation incorporated under the laws of, or having its principal place of business within this state.

"(7) Maintaining a domicile in this state while subject to a marital or family relationship which is the basis of the claim for divorce, alimony, separate maintenance, property settlement, child support, or child custody." MCL 600.705; MSA 27A.705, as amended by 1974 PA 90.

The 1974 amendments, effective April 1, 1975 (subsequent to the events which gave rise to the Khalafs' claims), amended the opening clause to substitute "an act" for "the act or acts", revised clauses (2) through (6), and added clause (7).

limited personal jurisdiction over the insurance agent on the ground that, as a consequence of his negligence, the corporation was uninsured for its tortious act and the Michigan residents are unable to collect the judgment entered by a Michigan court in Michigan or elsewhere.

We conclude that there were less than the "minimum contacts" required with Michigan to satisfy Federal constitutional requirements, and that Michigan cannot exercise jurisdiction over him.

I

Khalaf was injured while operating a press in Michigan. He and his wife commenced an action in the Wayne Circuit Court against National Machine Servicing Company, Inc., an Illinois corporation, for negligence and breach of implied warranty in servicing the press. National's insurer, Bankers & Shippers Insurance Company, refused to defend, claiming that the policy issued to National did not cover the operations which resulted in Khalaf's injury. The circuit judge entered an order permitting counsel retained by Bankers, who had previously entered an appearance for National, to withdraw as its counsel of record. A $250,000 default judgment was subsequently entered against National and remains unsatisfied.

The Khalafs commenced this action in the Wayne Circuit Court against Bankers for reformation, breach of contract, and negligence, and against James Dullard, the Illinois insurance agent who had procured the insurance for National from Bankers, alleging negligence in such procurement.

An order was entered granting Dullard's motion to quash service of process on the ground that the

court did not have limited personal jurisdiction over him. The Court of Appeals affirmed.

There are, broadly stated, three issues:

1) Does the Khalafs' complaint state a claim for relief, an issue of substantive law?

2) Did Dullard's acts create a relationship to Michigan within the meaning of the long-arm statute, an issue of statutory construction?

3) Would exercise of jurisdiction be compatible with the concepts of fundamental fairness embodied in the Due Process Clause, an issue of Federal constitutional law?

We do not consider the issues of substantive law and statutory construction because we conclude that the record does not establish that Dullard's relationship with Michigan was such as to make exercise of jurisdiction over him reasonable[2] under the Due Process Clause.

## II

Although we reject the Khalafs' long-arm theory on due-process grounds, and thus there is no need to decide whether their substantive theory is correct, we nevertheless state it because their long-arm theory builds on their substantive theory.

Their substantive theory is that an insurance agent is subject to liability in an "action for tort" to an unpaid judgment creditor for negligent failure to procure insurance which would have provided a source of recovery. Dullard, by reason of his contractual relationship with National, owed a

[2] "(1) A state has power to exercise judicial jurisdiction over a person if the person's relationship to the state is such as to make the exercise of such jurisdiction reasonable.

"(2) The relationships which are sufficient to support an exercise of judicial jurisdiction over a person are stated in §§ 27-52." 1 Restatement Conflicts, 2d, § 24.

duty to exercise due care in the performance of the contract and, as an alternative to an action for breach of contract, an action may be maintained in tort for negligent performance of that duty.[3] The acts committed by National which caused the Khalafs' loss are within the ambit of the coverage which Dullard agreed to procure for National and, had the agreed-upon insurance been procured, the Khalafs could have looked to it as a source of recovery. They were third-party beneficiaries of the Dullard-National contract, and Dullard owed them a duty to perform the contract with due care.[4]

The Khalafs on that basis assert that Dullard did or caused an act to be done or "consequences to occur" in Michigan which gave rise to an "action for tort", and therefore the court may exercise long-arm jurisdiction pursuant to clause (2) of the statute:

"The existence of any of the following relationships between an individual or his agent and the state shall constitute a sufficient basis of jurisdiction to enable a court of record of this state to exercise limited personal jurisdiction over the individual and to enable the court to render personal judgments against the individual or his representative arising out of an act which creates any of the following relationships:

\* \* \*

"(2) The doing or causing an act to be done, or consequences to occur, in the state resulting in an action for tort." MCL 600.705; MSA 27A.705.

The consequence alleged to have occurred in Mich-

---

[3] See *Williams v Polgar*, 391 Mich 6, 22; 215 NW2d 149 (1974); *Clark v Dalman*, 379 Mich 251, 261; 150 NW2d 755 (1967); *Nash v Sears, Roebuck & Co*, 383 Mich 136, 143; 174 NW2d 818 (1970).

[4] See *Williams v Polgar, supra; Clark v Dalman, supra;* and *Nash v Sears, Roebuck & Co, supra.*

igan is that they (Michigan residents) are unable to collect in Michigan or elsewhere the Michigan judgment which they obtained against National. Dullard in Illinois caused that consequence by entering into a contract to procure insurance for National and by negligently performing that contract. The negligent performance provides a basis for maintaining an action for tort.

The Khalafs assert that exercise of jurisdiction by Michigan would be consistent with the "minimum contacts", "traditional notions of fair play and substantial justice" standard declared under the Due Process Clause by the United States Supreme Court.[5] Dullard was aware that National had transacted business in at least one state (Wisconsin) other than Illinois before National serviced the press in Michigan. By agreeing to procure and by procuring insurance for a business whose operations he knew extended beyond Illinois, Dullard was involved in the stream of commerce. His deposition indicated that he may have thought the coverage provided by Bankers covered the Khalafs' loss. He should have foreseen that negligent performance of his contract with National could cause loss to a Michigan resident. Michigan has an interest in providing effective means of redress for its residents who would be at a severe disadvantage if required to maintain their action for negligence in procuring insurance in a distant forum. It is therefore fair and reasonable to require Dullard to respond in Michigan.

Dullard counters that the Khalafs' action sounds in contract and therefore is not an "action for tort". The noncollectibility of a judgment is not a "consequence" occurring in this state. A relation-

[5] *International Shoe Co v Washington*, 326 US 310, 316; 66 S Ct 154; 90 L Ed 95; 161 ALR 1057 (1945).

ship with Michigan such as is required by Federal standards was not established: His agreement to procure insurance covering operations beyond Illinois was not a "purposeful availment"[6] of the privilege of conducting activities within Michigan such as to render him subject to its process; he could not expect to be plucked from his Chicago office and dropped into the Wayne Circuit Court.

It is unnecessary to decide the statutory issues of whether an action for negligence which sounds in contract is an "action for tort"[7] or whether the noncollectibility of a judgment is a "consequence" occurring in this state.[8]

Proof alone that a nonresident caused an effect in Michigan that was foreseeable does not establish a relationship to Michigan such as to make it fair and reasonable to subject the nonresident to jurisdiction. A nonresident insurance agent is not subject to long-arm jurisdiction in an action for negligent procurement of insurance solely on evidence that i) he knows the insured may engage in activities outside the state in which the insured's activities are generally centered and the agreement to procure insurance was made and ii) he

[6] See *Hanson v Denckla,* 357 US 235, 253; 78 S Ct 1228; 2 L Ed 2d 1283 (1958).

[7] Compare *Coletti v Ovaltine Food Products,* 274 F Supp 719 (D PR, 1967); and *Frank Angelilli Construction Co, Inc v Sullivan & Son, Inc,* 45 Misc 2d 171; 256 NYS2d 189, *aff'd* 24 AD2d 491; 261 NYS2d 993, *motion dismissed* 16 NY2d 860; 264 NYS2d 97; 211 NE2d 519 (1965); with *Stanat Manufacturing Co v Imperial Metal Finishing Co,* 325 F Supp 794 (ED NY, 1971). *Cf. Southgate Community School District v West Side Construction Co,* 399 Mich 72, 80; 247 NW2d 884 (1976); *Fries v Holland Hitch Co,* 12 Mich App 178, 183; 162 NW2d 672 (1968); and *Huhtala v Travelers Insurance Co,* 401 Mich 118, 126; 257 NW2d 640 (1977).

[8] Another statutory issue is whether clause (4), "contracting to insure any person, property, or risk located within this state *at the time of contracting* [emphasis supplied]", expresses a limiting concept applicable to contracts to procure insurance. If so, there would be the further question whether "risk located within the state" includes inchoate risks not extant at the time of contracting.

agreed to procure insurance which covered those activities.

## III

The United States Supreme Court declared in *International Shoe Co v Washington*[9] that, in the context of long-arm jurisdiction, the question under the Due Process Clause is whether the defendant has such "minimum contacts" with the forum that maintenance of the action "does not offend 'traditional notions of fair play and substantial justice' ".[10] This has remained the governing standard in the Court's subsequent pronouncements.

The Court has held that jurisdiction may be maintained in respect to a single act having "substantial connection" with the state.[11] It may also

---

[9] *International Shoe Co v Washington, supra,* p 316.

[10] Decision in a particular case depends on its facts, *Woods v Edgewater Amusement Park,* 381 Mich 559, 569; 165 NW2d 12 (1969), and an assessment of the "quality and nature" of defendant's activity "in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure". *International Shoe Co v Washington, supra,* p 319.

A foreign corporation which systematically and continuously employed salesmen to canvass orders in the forum state was held subject to jurisdiction in an action by the state unemployment compensation fund to recover contributions. *International Shoe Co v Washington, supra.* A mail order insurance company was subject to jurisdiction although it did not employ agents in the state where its insurance certificates were systematically and widely delivered in the state following solicitations based on recommendations of citizens of the state. *Travelers Health Association v Virginia,* 339 US 643; 70 S Ct 927; 94 L Ed 1154 (1950).

[11] The insurer's action in offering by mail to continue insurance written by another company, whose business it had taken over, and the acceptance of that offer and payment of premiums by the insured constituted the requisite minimum contacts although the defendant insurer had never had an office or agent in the state nor had it solicited any insurance business in the state apart from the single policy. The Court emphasized the "increasing nationalization of commerce" and that "modern transportation and communication have made it much less burdensome for a party sued to defend himself in a state where he engages in economic activity". *McGee v International Life Ins Co,* 355 US 220, 223; 78 S Ct 199; 2 L Ed 2d 223 (1957).

be exercised over causes of action arising "from activities entirely distinct" from the defendant's activities in the forum where the nonresident has an adequate relationship with the state. "[G]eneral fairness to the [defendant] * * * [the] amount and kind of activities * * * mak[ing] it reasonable and just to subject the [defendant] to the jurisdiction of that state are to be determined in each case".[12]

A factor in the analysis is the state's interest in providing "effective means of redress for its residents".[13]

It is not enough, however, that the forum state is "the 'center of gravity' of the controversy, or the most convenient location for litigation. The issue is personal jurisdiction, not choice of law. It is resolved in this case by considering the acts of the [defendant]".[14] Merely because "a State's law can properly be applied to a dispute, its courts [do not]

_____

[12] A Philippine Islands corporation whose activities had been halted by World War II could constitutionally be subjected to Ohio jurisdiction upon causes of action arising "from activities entirely distinct from its activities in Ohio" where the limited business of the corporation was carried on under the "continuous and systematic supervision" of its president in that state. *Perkins v Benguet Consolidated Mining Co,* 342 US 437, 445, 447-448; 72 S Ct 413; 96 L Ed 485 (1952).

See, also, *Watson v Employer's Liability Assurance Corp, Ltd,* 348 US 66; 75 S Ct 166; 99 L Ed 74 (1954), rejecting in an action by a products liability claimant equal protection, contract, due process and full faith and credit clause challenges to a Louisiana statute subjecting a foreign insurer to a direct action by an injured person without regard to whether the policy was written or delivered in Louisiana or the contract forbade such direct action.

[13] In addition to the factors that the forum was the place where the insurance contract was delivered, premiums were mailed to the insurer, and the insured died, the Court emphasized the state's "manifest interest in providing effective means of redress for its residents when their insurers refuse to pay claims". The insured would be "at a severe disadvantage" if required to sue in a distant state. Small or moderate claimants could not afford the cost of maintaining an action in another state. Often important witnesses on the insurer's defense will be found in the state where the insured resides. *McGee v International Life Ins Co, supra,* p 223.

[14] *Hanson v Denckla, supra,* p 254.

necessarily have jurisdiction over the parties to that dispute".[15]

It is *"essential in each case* that there be some act by which *the defendant purposefully avails* itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws". (Emphasis supplied.)[16] The defendant's activities will ordinarily be such that he will have "reason to expect to be haled before" the forum court.[17]

Justice Blackmun, as a circuit judge, observed:

"We also think it is fair to say that these five Supreme Court cases establish only general and not precise guidelines. Perhaps they purposely do no more than this. We observe, however, that, at one time or another in the opinions, three primary factors, namely,

[15] *Shaffer v Heitner,* 433 US 186, 215; 97 S Ct 2569; 53 L Ed 2d 683 (1977).

The Court held that an action could not necessarily be maintained against directors and officers of a corporation in the state where it was chartered. It was not claimed that the defendants had ever entered the state or that any act related to plaintiffs' claim took place in the state. The plaintiffs had failed to demonstrate that the state was "a fair forum for this litigation". *Id.,* p 215.

Although the chartering state provides substantial benefits to corporate officers and directors, that establishes "only that it is appropriate" for the state to govern the obligations of officers and directors to the corporation and its stockholders. It does not demonstrate that the officers and stockholders had "purposefully avail[ed themselves] of the privilege of conducting activities within the forum State". *Id.,* p 216.

[16] The Court declared that a nonresident trustee of an *inter vivos* trust was not subject to jurisdiction of the state to which the settlor had moved, although she had executed a written power of appointment in favor of persons residing in that state. None of the trust assets had ever been held or administered in the state. While the trustee remitted income to the settlor in the state there was "no instance in which the *trustee* [emphasis in original] performed any acts in Florida that bear the same relationship to the agreement as the solicitation in *McGee.* Consequently, this suit cannot be said to be one to enforce an obligation that arose from a privilege the defendant exercised in Florida". *Hanson v Denckla, supra,* p 252.

[17] *Shaffer v Heitner, supra,* p 216. In making this observation, the Court noted the absence of a statute treating acceptance of a directorship as consent to jurisdiction in the state.

the *quantity* of the contacts, the *nature and quality* of the contacts, and the *source and connection* of the cause of action with those contacts, are stressed, and that two others, *interest of the forum state* and *convenience,* receive mention." (Emphasis supplied.)[18]

Jurisdiction based on causing "effects" in another state was considered by the Court in a recent case, *Kulko v Superior Court of California in & for the City & County of San Francisco.*[19] An all-encompassing California statute permits courts of that state to "exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States".[20] The California Supreme Court held that the defendant had caused an

---

[18] *Aftanase v Economy Baler Co,* 343 F2d 187, 197 (CA 8, 1965).

[19] *Kulko v Superior Court of California in & for the City & County of San Francisco,* 436 US 84; 98 S Ct 1690; 56 L Ed 2d 132 (1978).
The Court declared that California could not exercise jurisdiction over a New York resident for the purpose of increasing child support allowances. The parties were both residents of New York and had married in California during a three-day stopover while the husband was en route from a military base in Texas to a tour of duty in Korea. Upon his return he spent one day in California. They lived in New York and their children were born there. The California court did not predicate jurisdiction on the three-day or the 24-hour stopover.
After the parties separated, the wife moved to California. The separation agreement was made in New York, the marital domicile. Under the separation agreement, the children spent their vacations with their mother. One of them asked to be permitted to join her mother in California and the father bought her plane ticket and she moved to California. The other child flew to California without his advance knowledge. The Court concluded that the father had not, by allowing one of the children to move to California, purposefully availed himself of the benefits and protection of California's laws.
The Court said that the father had not caused physical injury to either property or persons or engaged in "commercial transactions in interstate commerce". He had merely "acquiesce[d] in the stated preference of one of his children to live with her mother in California. This single act is surely not one that a reasonable parent would expect to result in the substantial financial burden and personal strain of litigating a child-support suit in a forum 3,000 miles away, and we therefore see no basis on which it can be said that appellant could reasonably have anticipated being 'haled before a [California] court' ". *Id.,* pp 97-98.

[20] Cal Code Civ Proc, § 410.10.

"effect" in California by allowing one of his children, for whom he was paying a support allowance pursuant to a New York separation agreement and a divorce, to join her mother in California.

The United States Supreme Court said that the "effects" test was derived from 1 Restatement Conflicts, 2d, § 37:

"A state has power to exercise judicial jurisdiction over an individual who causes effects in the state by an act done elsewhere with respect to any cause of action arising from these effects unless the nature of the effects and of the individual's relationship to the state make the exercise of such jurisdiction unreasonable."

"[T]his section was intended to reach wrongful activity outside of the State causing injury within the State * * * (shooting bullet from one State into another), or commercial activity affecting state residents" but, even in such situations, "the Restatement recognizes that there might be circumstances that would render 'unreasonable' the assertion of jurisdiction over the nonresident defendant".[21]

The Court concluded that the father had not purposefully availed himself of the privilege of conducting activity in California. While California had a substantial interest in protecting the welfare of a minor resident, that alone would not make California a fair forum. The defendant father derived no "personal or commercial benefit from his child's presence in California". "[S]ending a child to California to live with her mother is not a commercial act and connotes no intent to obtain nor expectancy of receiving a corresponding ben-

[21] *Kulko v Superior Court, supra,* p 96.

efit in the State that would make fair the assertion of that State's judicial jurisdiction".[22]

## IV

The Khalafs contend that the Federal constitutional standard is satisfied by Dullard's involvement in the stream of commerce, his agreement to procure insurance covering National's business activities in Michigan and the reasonably foreseeable loss caused a Michigan resident by his negligent failure to do so.

It is not claimed that Dullard's negligence was committed with the intention of causing effects in Michigan but, rather, that his acts could reasonably have been expected to do so. In such a case the Restatement suggests the following analysis:

"The act may not have been done with the intention of causing effects in the state but could reasonably have been expected to do so. Whether the state may exercise judicial jurisdiction in such a situation depends upon a variety of factors, including the *extent of the relationship of the state* to the defendant and to the plaintiff, the *nature and quality of the effects* resulting from the act, and the *degree of inconvenience* which would result to the defendant from being forced to stand suit in the state on the particular cause of action." 1 Restatement Conflicts, 2d, § 37 (emphasis supplied).

Dullard was an insurance agent in Illinois. There is no evidence that he transacted business in Michigan at any time, nor evidence that he ever procured insurance for persons or property in Michigan or covering risks of loss extant in Michigan at the time the policy was written. Nor is there any evidence that his customer, National,

---

[22] *Id.,* p 101.

apart from the activities that occasioned the Khalafs' loss, ever did business in Michigan.

The only evidence indicating that Dullard knew that National did business outside Illinois is a certificate of insurance which he furnished to a Wisconsin company showing that National had been covered by Bankers under a comprehensive general liability policy. The certificate was furnished a few months after the date of the agreement to procure insurance relied on by the Khalafs and after Bankers issued its policy. Dullard indicated that he may have thought that the policy issued by Bankers covered the type of claim asserted by the Khalafs.

The evidence thus tends to show that Dullard did procure insurance for risks of loss outside Illinois, was to that extent involved in the stream of interstate commerce, had agreed with National to procure insurance covering risks of loss of the kind represented by the Khalafs' claim, had reason to believe that National might do business at some indeterminate future time in some other state, possibly Michigan, and should reasonably have foreseen that negligent performance of his agreement with National could cause loss to a Michigan resident.

Policies of insurance generally provide coverage beyond the jurisdiction in which the insured's activities are centered. Just as passenger automobile and homeowner liability policies protect a person when he travels beyond the boundaries of his state of residence, policies covering those engaged in commercial or industrial enterprises may provide such extended territorial coverage. The policy issued by Bankers to National may have so provided. Such extended territorial coverage may

be and frequently is provided without focus on or identification of any particular out-of-state activity of the insured and without additional or identified premium charge at the time the policy is written.

To hold that because of such extended territorial coverage an insurance agent has caused a foreseeable effect wherever the insured may travel justifying the exercise of long-arm jurisdiction would be to subject insurance agents, however small and localized their operations, to the jurisdiction of any state to which an insured might travel.

Michigan is properly concerned with providing effective means of redress for its residents. The Khalafs, however, would have no need to transport witnesses from Michigan to Illinois to maintain an action against Dullard for negligence in procuring insurance. The witnesses are more likely to be located in Illinois.

The "quality and nature"[23] of the effect in Michigan, inability to collect a judgment, do not pose the risk of physical harm presented by driving an automobile or distributing manufactured products in this state.[24]

Foreseeable effects are a factor in the analysis, but an essential consideration is whether the defendant has "purposefully availed" himself of the privilege of conducting his activities in Michigan.

A "purposeful availment" is something akin either to a deliberate undertaking to do or cause an act or thing to be done in Michigan or conduct which can be properly regarded as a prime generating cause of the effects resulting in Michigan, something more than a passive availment of Mich-

---

[23] *International Shoe Co v Washington, supra,* p 319. See fn 11, *supra.*

[24] See 1 Restatement Conflicts, 2d, § 37, Comment (a), p 158. See also *Kulko v Superior Court, supra,* p 96.

igan opportunities. The defendant will have reason to foresee being "haled before" a Michigan court.

The effect on the injured person (third party beneficiary) may be the same whether it is the insurer who fails to perform a contract of insurance or the insurance agent who fails to perform a contract to procure insurance. There is, nevertheless, a significant difference between an insurer's obligation and an insurance agent's obligation in terms of the nature of defendant's business and defendant's purposeful availment of the privilege of conducting activities within Michigan.

Since insurers generally seek to sell their services in new territories including other states, and depend on out-of-state business to generate volume, it is ordinarily fair to conclude that their involvement in commercial activity respecting a state is a direct result of a purpose to expand their business.

Insurance agents, on the other hand, do not generally[25] seek to expand their business into other states. They will, nevertheless, find themselves writing insurance for risks in other states as a result of the expansion of their customers' businesses. They become involved in another state, not because of their own purpose to do so, but because of their customers' purpose.

An insurer agrees to defend the insured in the forum, an insurance agent generally does not undertake to do anything in the forum. There is a substantial difference between agreeing, as does an insurance agent, to procure someone who will act in Michigan and agreeing, as does an insurer, to act in Michigan. The effect of nonperformance may, indeed, be consequences in Michigan affect-

---

[25] We note that some large insurance agencies operate on a multistate, even nationwide, basis.

ing in the same way the insured or an injured person, but foreseeable effects alone are not purposeful availment.

The Supreme Court of Hawaii held that a Virginia physician was not subject to long-arm jurisdiction in Hawaii for negligence in prescribing medication in Virginia claimed to have resulted in the patient's loss of consciousness while driving an automobile in Hawaii which struck plaintiff's automobile:

"The case before us is not one involving a defendant who introduces a defective product into the stream of commerce. Neither is it one involving an intentional tort, nor one where the act was performed for the purpose of causing an effect in Hawaii. Here there was only a chance encounter between a Hawaii resident visiting in Virginia and a physician who was engaged in a strictly localized medical practice.

"We hold that under the circumstances of this case, the assertion of jurisdiction over the defendant Virginia physician would be violative of his rights under the Due Process Clause of the United States Constitution. Ordinary foreseeability principles of tort law are helpful but not determinative, for we are here concerned with constitutional principles of due process. Mere foreseeability of injury was not sufficient to establish the minimum contact necessary to satisfy the requirements of due process."[26]

---

[26] *Kailieha v Hayes,* 56 Hawaii 306, 312; 536 P2d 568, 572 (1975). See also *Price v Shessel,* 415 F Supp 306 (ED Mich, 1976), and compare with *Hoagland v Springer,* 75 NJ Super 560; 183 A2d 678 (1962); *Roche v Floral Rental Corp,* 95 NJ Super 555; 232 A2d 162 (1967); *Blessing v Prosser,* 141 NJ Super 548; 359 A2d 493 (1976); *Edmundson v Miley Trailer Co,* 211 NW2d 269 (Iowa, 1973); *Walker v University Books, Inc,* 382 F Supp 126 (ND Cal, 1974).

See, also, Johnson, *How Minimum is "Minimum Contact"? An Examination of "Long Arm" Jurisdiction,* 9 S Tex L J 184 (1967); Comment, *Judicially Refining the Missouri Long-Arm Statute: A Tort as the "Minimum Contact",* 16 St Louis U L J 315 (1971); Note, *In Personam Jurisdiction Expended: Utah's Long-Arm Statute,* 1970 Utah L Rev 222; Note, *Long Arm Statute Jurisdiction When the Tortious Act Occurs in One State, The Injurious Consequences in*

If causing foreseeable effects alone constituted purposeful availment, a roadside "Ma & Pa" sandwich shop in Toledo, Ohio would be subject to long-arm jurisdiction although the adverse physical effects of a tainted sandwich, consumed there or across the border in Monroe, Michigan, manifested themselves or persisted in Detroit or in the Upper Peninsula. It is clearly foreseeable that a person who buys a sandwich at a roadside shop in Toledo might travel to Michigan and that a negligently made sandwich might cause consequences beyond Ohio.

If causing foreseeable effects alone constituted purposeful availment, a Chicago grocery store supplying consumables, a haberdashery or boutique providing clothing, or a marina purveying boat supplies, to a person known to have a Michigan cottage, or a physician performing cosmetic surgery on him, could be subject to Michigan long-arm jurisdiction. In each instance the Chicago provider knows that the product or service is for use in Michigan, and that negligent performance will cause effects in Michigan. The enterprise is commercial, affecting the stream of commerce. But the nature of the provider's business is nevertheless so clearly localized that proof of transactions with Michigan residents should not alone subject the provider to long-arm jurisdiction. The generat-

Another, 30 Ohio St L J 410 (1969); Currie, *The Growth of the Long-Arm: Eight Years of Extended Jurisdiction in Illinois,* 1963 U Ill L Forum 533.

The Khalafs rely on cases decided by the Court of Appeals and in other jurisdictions where long-arm jurisdiction was sustained although it would appear that the out-of-state defendant had a slight relationship with Michigan. There are a plethora of cases construing the long-arm statutes of this and other jurisdictions. We have examined the cases cited by the Khalafs and still other cases. We see no need to decide whether all those cases were correctly decided or to reconcile them. Our responsibility would be different if the other cases were decisions of the United States Supreme Court or of this Court.

ing cause is not the provider's desire to enlarge his business into Michigan but, rather, the Michigan customer's desire to do business with the Chicago provider.

A localized business—sandwich shop, grocer, haberdashery, boutique, marina, physician, or insurance agent—does not depend on multi-state distribution to generate volume. Out-of-state effects are but an incident of the business.

A different question might be presented on evidence that the insurance agent agreed to insure specific risks in the forum state or that he transacted substantial business for insureds located in the state. It might then appear that because of the nature, quality and quantity of such an insurance agent's business he had purposefully availed himself of the privilege of conducting activity in Michigan and that Michigan was a "fair forum".[27] Such evidence is altogether lacking in this case.

On this record, Michigan is not, in our judgment, a fair forum. It would not be "reasonable, in the context of our federal system of government, to require" Dullard to defend the Khalafs' claims in Michigan.[28]

Affirmed, costs to appellee.

COLEMAN, FITZGERALD, and RYAN, JJ., concurred with LEVIN, J.

WILLIAMS, J. *(concurring specially).* I concur in the result and with the thrust but not the breadth of the analysis of Justice LEVIN's able and scholarly opinion. *Hapner*[1] and *Khalaf* suggest to me

---

[27] *Shaffer v Heitner, supra,* p 215.

[28] *International Shoe Co v Washington, supra,* p 317.

[1] *Hapner v Rolf Brauchli, Inc, post,* 404 Mich 160; 273 NW2d 822 (1978).

that we would do well in this fast-moving field of state long-arm jurisdiction to primarily stake out our lines on a case-by-case basis. This means that the facts of each case are of paramount importance.

*Khalaf* deals with the duty arising in regard to an insurance contract consummated in Illinois between an Illinois machine servicing corporation and defendant, an Illinois insurance agent. The plaintiffs Khalaf, Michigan residents, claim a third-party-beneficiary interest in this contract on account of an accident in Michigan, which would have been covered by the insurance except for defendant's negligent performance of his duty in Illinois. Defendant insurance agent was aware that the machine servicing corporation had transacted business in the adjoining state of Wisconsin. However, there was nothing on the record to show that the machine servicing corporation had transacted, or was transacting, business in Michigan, or in any other state, nor was there any record evidence that defendant insurance agent was conducting any business in Michigan or in any other state.

In this condition of the record, it is difficult to find that there was either a "stream of commerce", or a "foreseeable" or a "purposeful availment" relationship between defendant insurance agent and the unfortunate accident in Michigan. As a consequence, the Michigan long-arm statute has no application.

On the other hand, it is not difficult to envision that the change of one or two significant facts would change this conclusion. For example, it would have been important if the record had shown that the Illinois insurance agent could reasonably have foreseen that his client was about to

conduct operations in Michigan. It would have been equally important if it were on record that either the client or the insurance agent was doing a nationwide business, without necessarily specifying Michigan.

KAVANAGH, C.J., concurred with WILLIAMS, J.

BLAIR MOODY, JR., J., took no part in the decision of this case.