729 F.Supp. 556 (1989)
Carl LEIBOWITZ, Plaintiff,
v.
UNITED STATES of America, DEPARTMENT OF JUSTICE, BUREAU OF PRISONS, Thomas Plouff, Assistant United States Attorney, Richard Cook, Assistant United States Attorney, and John Gluch, Warden, Federal Correctional Institute, Milan, Michigan, Jointly and Severally, Defendants.
No. 89-71404.
United States District Court, E.D. Michigan, S.D.
September 26, 1989.
*557 *558 Robert Golden, Southfield, Mich., for plaintiff.
William Woodard, Asst. U.S. Atty., Detroit, Mich., for defendants.

*559 OPINION AND ORDER
COHN, District Judge.

I.
This is a federal prisoner civil rights case. Plaintiff, Carl Leibowitz, a federal prisoner formerly incarcerated in the Federal Correctional Institution in Milan, Michigan, (Milan) claims that Assistant United States Attorneys for the Northern District of Indiana Thomas Plouff (Plouff), and Richard Cook (Cook) threatened and intimidated a witness to falsely testify against him at his trial. In addition, plaintiff claims that Plouff and Cook conspired with the warden at Milan to place him in administrative segregation without good cause in violation of his due process rights. Plouff and Cook deny that they procured perjured testimony and move to dismiss this claim on the grounds of absolute prosecutorial immunity. In addition, defendants United States Bureau of Prisons and John Gluch, Warden at Milan, move to dismiss plaintiff's due process claims on the grounds that he was placed in administrative segregation to separate him from a government witness who had testified against him at his trial and that even if this decision was a mistake, they are entitled to qualified immunity. The Court finds that the defenses have merit and therefore plaintiff's complaint will be dismissed.

II.
Prior to his incarceration, plaintiff was an attorney who was in the business of promoting tax shelters.[1] In 1984, the government began a grand jury investigation into one of plaintiff's tax shelter schemes whereby he and a business partner, Gary Van Waeyenberge (Van Waeyenberge) leased nonexistent ethanol equipment to investors. By 1986, plaintiff became concerned that Van Waeyenberge would testify against him and he allegedly arranged for Donald Wrobel (Wrobel) to murder him. After a number of abortive attempts on Van Waeyenberge's life, Wrobel was arrested and then convicted and sentenced to a term of twenty years imprisonment. Plaintiff was arrested and charged with conspiracy to commit interstate murder-for-hire, obstruction of justice and witness tampering. Wrobel testified as the government's main witness and plaintiff was convicted and sentenced to five years imprisonment. Following plaintiff's conviction, Wrobel's sentence was reduced from twenty to five years.
Plaintiff was initially incarcerated at the federal penitentiary at Terre Haute, Indiana. In late 1988, plaintiff's security classification was reduced and on November 22, 1988, he was transferred to Milan. Wrobel had been incarcerated at Milan since November 18, 1987. After his transfer, plaintiff encountered Wrobel, who allegedly told him that he had testified falsely at his trial because of threats made by Plouff and Cook that he would serve a long sentence if he refused to cooperate. Wrobel subsequently met with plaintiff's attorney and executed an affidavit stating that he testified falsely. In late March, 1989, plaintiff filed a writ of mandamus with the Court of Appeals for the Seventh Circuit seeking a new trial on the basis of Wrobel's affidavit.
On March 29, 1989, after learning of the suit Plouff called Milan to find out whether Wrobel and plaintiff were indeed at the same institution. Plouff spoke to Case Manager Jeffery Raleigh (Raleigh) and informed him that plaintiff and Wrobel should be separated at once.[2] Plaintiff was immediately placed in administrative segregation pending his transfer to another institution. On June 26, 1988, he was transferred to the Federal Correctional Institution at Texarkana, Texas.

*560 III.

A.
Plaintiff has joined the United States of America, the Department of Justice, and the Bureau of Prisons as party defendants. These defendants move to dismiss for want of jurisdiction. This motion will be granted.
It is well settled that the United States cannot be sued without its consent. Block v. North Dakota, ex rel. Bd. of University & School Lands, 461 U.S. 273, 280, 103 S.Ct. 1811, 1816, 75 L.Ed.2d 840 (1983). The United States has given limited consent to be sued in the Federal Tort Claims Act, 28 U.S.C. secs. 1346(b), which provides for liability "under circumstances where the United States, if it were a private person would be liable to the claimant in accordance with the law of the place where the act or omission occurred." As the language of the Tort Act makes clear, however, an action against the government must be grounded in state law, and federal statutes cannot provide a basis of liability. Brown v. United States, 653 F.2d 196, 198-202 (5th Cir.1981); Community Brotherhood of Lynn v. Lynn Redevelopment Authority, 523 F.Supp. 779, 782 (D.Mass.1981). Agencies or instrumentalities of the United States are similarly immune from suit, unless a plaintiff can demonstrate that the cause of action falls within one of the statutory exceptions. 14 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure, 211 (1986).
Here, plaintiff's claims are grounded entirely on the federal constitution and statutes. No state law claims have been asserted. His claims do not fall within the statutory exceptions to immunity. Accordingly, plaintiff cannot sue either the United States or its agencies.

B.
As a preliminary matter, Plouff and Cook state that the Court lacks in personam jurisdiction over them because they lack the requisite minimum contacts with the State of Michigan. Plouff concedes that he telephoned Raleigh at Milan and followed the call with a letter, but argues that this is insufficient to establish jurisdictional minimum contacts under the Michigan Long Arm Statute, Mich.Stats.Ann. sec. 27A.705 [M.C.L.A. § 600.705].
Section 27A.705(2) [M.C.L.A. § 600.705] provides that "[t]he doing or causing of an act to be done, or consequences to occur, in the state resulting in an action for tort" will constitute a sufficient basis for personal jurisdiction. Michigan's Long Arm Statute extends jurisdiction to the maximum extent permitted by the due process clause of the constitution. Sifers v. Horen, 385 Mich. 195, 199, 188 N.W.2d 623 (1971). A party will be held to have subjected himself to the jurisdiction of Michigan courts when he purposefully avails himself to the privilege of conducting business in the state.
A `purposeful availment' is something akin either to a deliberate undertaking to do or cause an act or thing to be done in Michigan or conduct which can properly be regarded as a prime generating cause of the effects resulting in Michigan, something more than a passive availment of Michigan opportunities. The defendant will have reason to foresee being `haled before' a Michigan court.
Khalaf v. Bankers & Shippers Ins. Co., 404 Mich. 134, 153-54, 273 N.W.2d 811 (1978). See also Northern Ins. Co. v. Elliott, 117 Mich.App. 308, 316-17, 323 N.W.2d 683 (1982).
Plouff's act of telephoning Raleigh in Michigan and suggesting that plaintiff be separated from Wrobel was the kind of knowing and intentional act which would subject him to the jurisdiction of a Michigan Court. Plouff must have known that his action would have a direct and tangible result in Michigan. In addition, being an attorney skilled in the law, Plouff would have had reason to know that his phone call, if found to be improper, could possibly subject him to tort liability. As to Cook, he has not averred that he was not still working with Plouff as of March 28, 1989. In the absence of such an allegation, the Court is entitled to presume that he collaborated with Plouff in alerting the authorities *561 at Milan of plaintiff's situation. This is sufficient to subject him to the jurisdiction of a Michigan Court.[3]

IV.

A.
Plouff and Cook have moved to dismiss the portions of counts II, V, and VI which charge them with suborning perjury on the grounds that the negotiation of leniency in return for Wrobel's testimony against plaintiff fell within the scope of their prosecutorial duties and, as such, are protected by absolute immunity. The Court agrees.
In Imbler v. Patchman, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1974), the Supreme Court held that a prosecutor enjoys absolute immunity against suit for actions which are performed pursuant to his or her function as advocate for the state. Actions falling within the scope of the so-called advocacy function are defined as those "intimately associated with the judicial phase of the criminal process[.]" Id. at 430, 96 S.Ct. at 995. Although the Supreme Court declined to expressly decide the question in Imbler, subsequent decisions have suggested that administrative and investigative functions performed by prosecutors are entitled to only qualified immunity. Harlow v. Fitzgerald, 457 U.S. 800, 811 n. 16, 102 S.Ct. 2727, 2734 n. 16, 73 L.Ed.2d 396 (1982); Joseph v. Patterson, 795 F.2d 549, 554-55 (6th Cir.1986); Powers v. Coe, 728 F.2d 97, 103 (2d Cir.1984).
While it is not always clear whether a given action falls within the prosecutor's advocacy function, there is little doubt that the use of perjured testimony does. In Imbler, a majority expressly held that the alleged use of perjured testimony could not defeat a claim of absolute immunity. Imbler, supra 424 U.S. at 431 n. 34, 96 S.Ct. at 995 n. 34. Plaintiff's argument that a prosecutor is only entitled to immunity when his or her conduct is lawful would completely defeat the policies served by the immunity doctrine. The Court declines to adopt such an anomalous interpretation. Accordingly, plaintiff's claims against Plouff and Cook based on the alleged use of perjured testimony must be dismissed.

B.

1.
Although Plouff and Cook are entitled to absolute immunity for actions taken in connection with plaintiff's trial, it is not clear that absolute immunity inheres in their actions in separating plaintiff and Wrobel. Plouff's phone call and letter to Milan took place over four months after plaintiff's appeal of his conviction was decided and a motion for rehearing en banc had been denied. The conditions of plaintiff's incarceration had little or nothing to do with the preparation or prosecution of the government's case. Following a conviction, the trial judge cedes all jurisdiction over a convicted federal defendant to the United States Bureau of Prisons. 18 U.S.C. sec. 4082(b). The Bureau of Prisons enjoys almost absolute discretion over assignment, transfer, and conditions of confinement. Matter of Gee, 815 F.2d 41 (7th Cir.1987); Stinson v. Nelson, 525 F.2d 728 (5th Cir.1975); Clay v. Henderson, 524 F.2d 921 (9th Cir.1975). Accordingly, Plouff's notification to the authorities that plaintiff and Wrobel were improperly assigned was unrelated to his prosecutorial function. Accordingly, Plouff and Cook are entitled to only qualified immunity for their role in plaintiff's segregation and transfer. See also England v. Hendricks, 880 F.2d 281, 285 (10th Cir.1989) (prosecutor's statements to the media not part of *562 prosecutorial function and thus entitled only to qualified immunity).

2.
Government officials entitled to qualified immunity are shielded from liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The subjective malice or bad faith of the official is irrelevant, and the only inquiry is whether a reasonable person could have believed his actions lawful at the time they were undertaken. Anderson v. Creighton, 483 U.S. 635, 641, 107 S.Ct. 3034, 3040, 97 L.Ed.2d 523, 532 (1987).
Applying this qualified immunity standard, it is clear that Plouff and Cooks' actions in prompting plaintiff's segregation were protected. It is the policy of the Bureau of Prisons that government witnesses not be incarcerated in the same institutions with persons against whom they testified. Raleigh Declaration, para. 5. The rationale for such a policy is not difficult to understand. There is a serious and constant risk that prisoners will attempt to retaliate against government witnesses or coerce them into falsely recanting their trial testimony. The separation of such inmates is eminently reasonable, even though in individual cases, a prisoner may present no actual threat to a particular witness.
The Court does not understand plaintiff to challenge the legality or constitutionality of this policy. Rather, plaintiff seems to argue that Plouff and Cook were motivated by a malicious intent to see plaintiff placed in solitary confinement and to prevent him from challenging his conviction with Wrobel's recantation. As stated in Harlow, however, defendants' subjective bad faith is irrelevant to the question of qualified immunity. The inquiry is only whether a reasonable official could have believed that his conduct was lawful. In this case, it is undisputed that plaintiff was assigned to the same institution as Wrobel as a result of an administrative oversight. A reasonable prosecutor, upon learning of the situation, could have reasonably believed that the potential of threat or coercion existed and that the responsible prison officials should be alerted. Accordingly, plaintiff's remaining claims against Plouff and Cook will be dismissed.

V.

A.
In counts III and IV, plaintiff alleges that Plouff, Cook, and Gluch placed him in administrative segregation without good cause and that Gluch knowingly failed to take action to prevent this deprivation. These defendants have moved for summary judgment on these counts on the grounds of qualified immunity. Plaintiff "concede[s] that a legitimate concern over the safety of Donald Wrobel should be an act to which qualified immunity would attach" but contends that "[t]he same action, ... with a motivation of causing Carl Leibowitz ill, is an action to which qualified immunity should not attach." Brief at 14. This is a misstatement of the controlling authority.
Qualified immunity attaches irrespective of the malice or bad faith of the official. The only relevant inquiry is whether a reasonable official could have believed that his actions were lawful. Harlow, supra. In this case, a reasonable official could have concluded that plaintiff's assignment to administrative segregation was lawful.
Bureau of Prison regulations provide that a prisoner may be placed in administrative segregation "when the inmate's continued presence in the general population poses a serious threat to life, property, self, staff, other inmates, or to the orderly running of the institution" or "when the inmate is pending transfer." 28 C.F.R. sec. 541.22. For the reasons discussed earlier, a reasonable prison official in this case could have determined that transfer to administrative segregation of plaintiff pending permanent reassignment was warranted *563 by the circumstances.[4] Accordingly, plaintiff's claims that his assignment to administrative segregation without good cause are dismissed.

B.
Finally, plaintiff alleges in count I that he was denied his right to due process when prison officials violated Bureau of Prisons regulations requiring a hearing as to an inmate's assignment to administrative segregation. Defendants acknowledge that plaintiff was denied a hearing, but claim that the Court lacks jurisdiction over the claim because plaintiff failed to exhaust his administrative remedies prior to filing suit. Plaintiff does not dispute that he never filed an internal grievance over his assignment to administrative segregation. The Court finds this failure dispositive.
Where a prisoner files suit alleging constitutional deprivations, the district court should dismiss the claim if the prisoner has failed to first exhaust his administrative remedies. Davis v. Keohane, 835 F.2d 1147, 1148 (6th Cir.1987). Only if it can be shown that such remedies were utterly futile may a court dispense with this requirement. Id. at 1149. No such claim has been made in this case. Accordingly, plaintiff's due process claim will be dismissed.

VI.
For the reasons stated above, the defendants' motion for summary judgment is GRANTED and the case is DISMISSED.
SO ORDERED.
NOTES
[1] The facts surrounding plaintiff's criminal conviction are summarized in the Court of Appeals for the Seventh Circuit's decision in plaintiff's appeal from his conviction. See United States v. Leibowitz, 857 F.2d 373, 375-76 (7th Cir.1988).
[2] It is Bureau of Prisons policy that inmates who testify against one another are designated as "separatees" and are not placed in the same institution. In this case, a notation of Wrobel's testimony against plaintiff was inadvertently omitted from his case file. See Declaration of Jeffery Raleigh.
[3] In addition, Cook claimed that the Court lacks personal jurisdiction over him because of improper service. This claim is unavailing. It is well settled in this Circuit that a party may not secure dismissal of an action against him on the grounds of improper service unless he can show actual prejudice. Moreover, a defendant's appearance and answer in an action will usually be sufficient to negate any inference of prejudice from such a procedural defect. Gottfried v. Frankel, 818 F.2d 485, 492-93 (6th Cir.1987). Here, Cook was represented by Assistant United States Attorney William Woodard, who entered an appearance on behalf of all defendants. Under these circumstances, the motion for dismissal on the grounds of improper service is denied.
[4] Plaintiff also challenges the decision that he be transferred rather than Wrobel. It is undisputed that Wrobel had been assigned to Milan for a year longer than plaintiff and had adjusted well. Raleigh Declaration para. 5. Moreover, the discretion of prison officials over transfer, assignment, and classification of prisoners is plenary and the courts may not second guess them. Meachum v. Fano, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976); Matter of Gee, supra.