HAPNER v ROLF BRAUCHLI, INC

Docket No. 58977. Argued December 6, 1977 (Calendar No. 4).—Decided December 27, 1978. Rehearing denied 406 Mich 1103.

DeAnn and Benjamin Hapner brought a product liability action against Rolf Brauchli, Inc., and Solis Appartus Manufactories, Ltd., a Swiss corporation, for personal injuries to DeAnn Hapner caused by a hair dryer manufactured by defendant Solis and imported by defendant Rolf Brauchli, Inc. The dryer was purchased from a barber in Chicago; DeAnn used it at home there and at the University of Michigan in Ann Arbor, where she was a student. After the dryer had been repaired in

REFERENCES FOR POINTS IN HEADNOTES

[1-13] 20 Am Jur 2d, Courts §§ 144, 146.

62 Am Jur 2d, Process §§ 75, 79-82.

63 Am Jur 2d, Products Liability §§ 215-217.

What amounts to doing business in a state within statute providing for service of process in action against nonresident natural person or persons doing business in state. 10 ALR2d 200.

State's power to subject nonresident individual other than a motorist to jurisdiction of its courts in action for tort committed within state. 78 ALR2d 397.

Products liability: in personam jurisdiction over nonresident manufacturer or seller under "long-arm" statutes. 19 ALR3d 13.

Validity, as a matter of due process, of state statutes or rules of court conferring in personam jurisdiction over nonresidents or foreign corporations on the basis of isolated business transactions. 20 ALR3d 1201.

Construction and application of state statutes or rules of court predicating in personam jurisdiction over nonresidents or foreign corporations on making or performing a contract within the state. 23 ALR3d 551.

Construction and application of state statutes or rules of courts predicating in personam jurisdiction over nonresidents or foreign corporations on the commission of a tort within the state. 24 ALR3d 532.

Construction and application, as to isolated acts or transactions, of state statutes or rules of court predicating in personam jurisdiction over nonresidents or foreign corporations upon the doing of an act, or upon doing or transacting business or "any" business, within the state. 27 ALR3d 397.

[5] 4 Am Jur 2d, Appeal and Error §§ 494, 497.

Chicago, DeAnn was injured in Ann Arbor by electrical shocks and burns when it came apart. Defendant Solis was granted accelerated judgment by the Washtenaw Circuit Court, William F. Ager, Jr., J., on the ground that the circuit court did not have personal jurisdiction under the "long-arm" statute because Solis lacked the requisite minimum contacts. The Court of Appeals, R. M. Maher, P.J., and D. C. Riley and R. M. Ryan, JJ., reversed in a per curiam opinion (Docket No. 26321). Defendant Solis appeals. *Held:*

The record in this case does not support a finding that the defendant Solis had such a marketing system for distribution of its products in Michigan that it had purposefully availed itself of the privilege of conducting activities within this state. The judgment of the Court of Appeals is reversed, and the case is remanded to the trial court.

Justice Levin, joined by Justice Fitzgerald, would remand to the trial court for further proceedings with leave to the plaintiff to adduce further proofs regarding the extent of Solis' availment of the privilege of conducting its activities in Michigan. Proof alone that a nonresident caused an effect in Michigan that was foreseeable does not establish a relationship to Michigan such as to make it fair and reasonable to subject the nonresident to jurisdiction. Unless products of the manufacturer are distributed in this state pursuant to its marketing system in such a manner and to such an extent that it can properly be said that the manufacturer has purposefully availed itself of the privilege of conducting activities within this state, it does not ordinarily have substantial connection or requisite minimum contacts with this state justifying the exercise of long-arm jurisdiction. A manufacturer's marketing system is generally seen as a purposeful availment of the privilege of acting in a forum in which it has reason to know its products are distributed pursuant to that system. The record in this case shows only that products of the Swiss manufacturer are sold by it to independent importers located in New York, Chicago and Los Angeles. It does not appear whether any Solis products are distributed beyond the states of New York, Illinois, and California as a part of Solis' marketing system, and there is no basis for an inference either that its products were in fact distributed in Michigan or that Solis had reason to know that its products were distributed in Michigan through the system established for marketing them in this country. Absent such evidence, Michigan is not a fair forum although it is foreseeable that a purchaser in Illinois may be a Michigan resident or that an Illinois resident may bring or send the product to Michigan.

However, it appears, from other evidence not part of the record on appeal, that Solis products have been extensively distributed in this state and that the failure of proof was inadvertent and so insubstantial that, appraising it in light of the unsettled state of the jurisprudence, the case should not on that account be dismissed, but should be remanded to the trial court with leave to the plaintiffs to adduce further proofs regarding the extent of Solis' availment of the privilege of conducting its activities in Michigan.

Justice Ryan, joined by Justice Coleman, agreed with Justice Levin that the record before the Court in this case does not support a finding that the distribution system shown to be employed by the defendant constituted purposeful availment, and would reverse the judgment of the Court of Appeals. However, he could not countenance looking outside the record to support a remand to allow the plaintiffs another opportunity to develop the record.

Reversed.

Justice Moody, joined by Chief Justice Kavanagh and Justice Williams, would affirm the judgment of the Court of Appeals:

1. The "long-arm" statute is an attempt by the Legislature to expand to its full potential limited personal jurisdiction of Michigan courts over a nonresident who causes injuries to occur within this state without the defendant ever having been within the state boundaries. Therefore, the courts have liberally construed the statute. Assuming the accuracy of the plaintiffs' pleadings, defendant Solis did cause a consequence to occur resulting in an action for tort and is subject to the limited jurisdiction of the statute.

2. The present controversy involves fewer contacts by the defendant with Michigan than in previously decided cases. Therefore, the Court must examine the facts of this case within the context of the due-process limitations established by the United States Supreme Court. In order to subject a nonresident defendant to in personam jurisdiction the defendant must have sufficient "minimum contacts" with the state so that maintenance of suit does not offend traditional notions of fair play and substantial justice. Whether due process is satisfied depends upon the quality and nature of the nonresident's activity in relation to the fair and orderly administration of the state's law. The "minimum contact" must be some act by which the nonresident defendant avails himself of the privilege of conducting activities in the forum state.

3. The argument that due process requires privity of contract between a nonresident manufacturer and a consumer for a

state court to exercise "long-arm" jurisdiction over the manufacturer in a product liability case ignores the complexity of commercial transactions in today's market. The presence of a product within a particular forum cannot always result from direct shipment by the manufacturer. The movement of products may be by the consumer, by independent middlemen, or by a second or third manufacturer who purchases the defendant's product for use as a component in its goods. Nonresident manufacturers should not be permitted to use circuitous distribution channels to avoid defending actions for injuries caused by their products.

4. "Long-arm" jurisdiction over a nonresident manufacturer for product liability in the state where the injury occurs is constitutionally sustained whenever that manufacturer places a product in the stream of national or international commerce and can reasonably foresee that the product will enter the forum state. This rule in product liability cases focuses on the economic reality of manufacturing enterprises, rather than on the outward form of business transactions. Whether the product's use or purchase was an isolated instance or part of a continuous course of business in the state is relevant, but not necessarily decisive, in determining the existence of the requisite jurisdictional activity. Only if isolated use or purchase conclusively establishes lack of foreseeability that the product will enter the state is the isolation necessarily fatal to jurisdiction over the manufacturer.

5. The product in this case is a hair dryer which is mass-produced in Switzerland for distribution and sale in international commerce and for diffuse distribution in the United States by three independent importers located in California, New York and Illinois. Clearly, defendant Solis placed its product into the broad stream of commerce.

6. The only question remaining is whether Solis could reasonably foresee that its product would be used in Michigan. In determining reasonable foreseeability on the part of a manufacturer, the nature of the defective product and the volume of distribution can be used as yardsticks of foreseeability. The defective product in the present case is a portable hair dryer. Residents of the United States are extremely mobile in occupational, educational, and recreational activities. A portable hair dryer, like an electric shaver or other personal grooming equipment, foreseeably crosses state borders as a normal part of the individual consumer's life style.

7. Defendant Solis placed this portable hair dryer in the national stream of commerce and reasonably and fairly could

foresee its ultimate use in Michigan or in any other state. Traditional notions of fundamental fairness and substantial justice are not offended by subjecting the defendant Solis to the limited personal jurisdiction of a Michigan court. Furthermore, public policy dictates the result reached in this case. With the breakdown in international commercial barriers, and the resulting fact that a substantial portion of goods sold to American consumers today is manufactured in foreign lands, the Court would be striking a serious blow at consumer protection if it did not recognize such jurisdiction. One cannot expect consumers in this state to travel to other parts of the world to litigate injuries from tortious acts committed in this state. Fairness to the foreign manufacturer does not require that hardship to local consumers.

71 Mich App 263; 247 NW2d 375 (1976) reversed.

OPINION BY LEVIN, J.

1. COURTS — JURISDICTION — NONRESIDENTS — LONG-ARM STATUTE — DUE PROCESS.

Proof alone that a nonresident caused an effect in Michigan that was foreseeable does not establish a relationship to Michigan such as to make it fair and reasonable to subject the nonresident to Michigan "long-arm" jurisdiction (US Const, Am XIV; MCL 600.715; MSA 27A.715).

2. COURTS — JURISDICTION — NONRESIDENTS — LONG-ARM STATUTE — DUE PROCESS — PRODUCTS LIABILITY.

A nonresident manufacturer does not ordinarily have substantial connection or requisite minimum contacts with the state justifying the exercise of "long-arm" jurisdiction in an action for product liability unless products of the manufacturer are distributed in the state pursuant to its marketing system in such a manner and to such an extent that it can properly be said that the manufacturer has purposefully availed itself of the privilege of conducting activities within the state (US Const, Am XIV; MCL 600.715; MSA 27A.715).

3. COURTS — JURISDICTION — PRODUCTS LIABILITY — NONRESIDENTS — LONG-ARM STATUTE.

A finding in an action for products liability that a defendant Swiss corporation had such a marketing system for distribution of its products in Michigan that it had purposefully availed itself of the privilege of conducting activities in Michigan and that Michigan is a fair forum is not supported by the record where the defendant's products were distributed in the United

States by independent importers located in California, New York and Illinois, and the product which caused an injury to the plaintiff in Michigan was purchased by the plaintiff from a third party in Illinois (MCL 600.715; MSA 27A.715).

4. COURTS — JURISDICTION — NONRESIDENTS — LONG-ARM STATUTE — PRODUCTS LIABILITY — EVIDENCE.

*An action for products liability should be remanded to the trial court for further proceedings with leave to the plaintiff to adduce further proofs regarding the extent of a nonresident defendant's availment of the privilege of conducting its activities in the forum state where it appears from evidence not a part of the record on appeal that the defendant's products have been extensively distributed in the forum state and that the failure of proof justifying the exercise of "long-arm" jurisdiction was inadvertent and so insubstantial, appraising it in light of the unsettled state of the jurisprudence, that the action should not on that account be dismissed (MCL 600.715; MSA 27A.715).*

OPINION BY RYAN, J.

See headnotes 1-3.

5. COURTS — JURISDICTION — APPEAL AND ERROR.

*An appellate court should not look outside the record for facts to support a remand to the trial court to allow a plaintiff another opportunity to develop a factual record to support a finding that the trial court had "long-arm" jurisdiction over a nonresident defendant (MCL 600.715; MSA 27A.715).*

DISSENTING OPINION BY BLAIR MOODY, JR., J.

6. COURTS — JURISDICTION — TORTS — NONRESIDENTS — LONG-ARM STATUTE.

*The "long-arm" statute is an attempt by the Legislature to expand to its full potential limited personal jurisdiction of Michigan courts over a nonresident who causes injuries to occur within this state without the defendant ever having been within the state boundaries; therefore the courts have liberally construed the statute (MCL 600.715; MSA 27A.715).*

7. COURTS — JURISDICTION — PRODUCTS LIABILITY — NONRESIDENTS — LONG-ARM STATUTE.

*A defendant Swiss corporation which manufactured a portable hair dryer, purchased by the plaintiff from a third party in*

*Illinois, which allegedly caused injuries by electrical shocks during use in Michigan caused a consequence to occur in Michigan resulting in an action for tort and is subject to limited personal jurisdiction under the terms of the "long-arm" statute (MCL 600.715; MSA 27A.715).*

8. COURTS — JURISDICTION — NONRESIDENTS — LONG-ARM STATUTE — DUE PROCESS.

   *A nonresident defendant must have sufficient minimum contacts with a forum state so that the maintenance of suit under a "long-arm" statute or court rule does not offend the traditional notions of fair play and substantial justice; whether due process is satisfied depends upon the quality and nature of the nonresident's activity in relation to the fair and orderly administration of the state's law (US Const, Am XIV; MCL 600.715; MSA 27A.715).*

9. COURTS — JURISDICTION — NONRESIDENTS — LONG-ARM STATUTE — DUE PROCESS — PRODUCTS LIABILITY — PRIVITY OF CONTRACT.

   *The argument that due process requires privity of contract between a nonresident manufacturer and a consumer for a state court to exercise "long-arm" jurisdiction over the manufacturer in a product liability case ignores the complexity of commercial transactions in the marketing of consumer goods; nonresident manufacturers should not be permitted to use circuitous distribution channels to avoid defending actions for injuries caused by their products (US Const, Am XIV; MCL 600.715; MSA 27A.715).*

10. COURTS — JURISDICTION — NONRESIDENTS — LONG-ARM STATUTE — DUE PROCESS — PRODUCTS LIABILITY.

   *"Long-arm" jurisdiction over a nonresident manufacturer for product liability in the state where the injury occurs does not offend due process where that manufacturer places its products in the stream of national or international commerce and can reasonably foresee that the product will enter the forum state; the rule focuses on the economic reality of manufacturing enterprises, rather than on the outward form of business transactions (US Const, Am XIV; MCL 600.715; MSA 27A.715).*

11. COURTS — JURISDICTION — NONRESIDENTS — LONG-ARM STATUTE — DUE PROCESS — PRODUCTS LIABILITY.

   *Whether a product's use or purchase was an isolated instance or part of a continuous course of business in a forum state is relevant, but not necessarily decisive, in determining the exis-*

*tence of the requisite activity by a nonresident manufacturer
subjected to the "long-arm" jurisdiction of the state in an
action for product liability to satisfy due process (US Const, Am
XIV; MCL 600.715; MSA 27A.715).*

12. COURTS — JURISDICTION — NONRESIDENTS — LONG-ARM STATUTE
    — DUE PROCESS — PRODUCTS LIABILITY.

*Subjecting a defendant Swiss corporation to limited personal
jurisdiction of Michigan courts under the "long-arm" statute
for an injury caused in Michigan by a portable hair dryer
which the defendant manufactured in Switzerland and which
was purchased from a third party in Illinois does not offend due
process where the defendant placed its product into the na-
tional stream of commerce for distribution in the United States
by independent importers located in California, New York and
Illinois; a portable hair dryer, like an electric shaver or other
personal grooming equipment, foreseeably crosses state borders
as a normal part of a consumer's mobility in occupational,
educational, and recreational activities (US Const, Am XIV;
MCL 600.715; MSA 27A.715).*

13. COURTS — JURISDICTION — NONRESIDENTS — LONG-ARM STATUTE
    — PRODUCTS LIABILITY — PUBLIC POLICY.

*The public policy of consumer protection dictates that with the
breakdown in international commercial barriers, and the fact
that a substantial portion of goods sold to American consumers
today is manufactured in foreign lands, foreseeability that the
product could be used in the forum state is the most important
factor in recognizing "long-arm" jurisdiction in actions for
product liability; fairness to the foreign manufacturer does not
require the hardship to the local consumer of traveling to other
parts of the world to litigate injuries from tortious acts commit-
ted in the forum state (MCL 600.715; MSA 27A.715).*

*Goodman, Eden, Millender & Bedrosian* (by *Rob-
ert A. Koory)* for plaintiffs.

*Butzel, Fruhauf, Keidan, Simon, Myers, and
Graham* (by *Douglas G. Graham* and *Richard P.
Saslow),* for defendant Solis Apparatus Manufacto-
ries, Ltd.

LEVIN, J. *(for remand).* While I agree with my

colleague that the requisite "minimum contacts"[1] justifying the exercise of long-arm jurisdiction may be established without proof of "solicitation, sale or delivery within the state of injury by the defendant [manufacturer] to the plaintiff", an out-of-state manufacturer is not subject to Michigan long-arm jurisdiction merely because one of its products was brought into Michigan and caused harm to a Michigan resident and it was foreseeable that might occur. "Proof alone that a non-resident caused an effect in Michigan that was foreseeable does not establish a relationship to Michigan such as to make it fair and reasonable to subject the non-resident to jurisdiction."[2] *Khalaf v Bankers & Shippers Ins Co, ante,* 404 Mich 134, 145; 273 NW2d 811 (1978).

Unless products of the manufacturer are distributed in this state pursuant to its marketing system in such a manner and to such an extent that it can properly be said that the manufacturer has "purposefully avail[ed] itself of the privilege of conducting activities" within this state,[3] it does not

---

[1] *International Shoe Co v Washington,* 326 US 310, 316; 66 S Ct 154; 90 L Ed 95; 161 ALR 1057 (1945).

[2] I also note my disagreement with the statement that "[i]n previous decisions, this Court has viewed the statute as an attempt by the Legislature to expand to its full potential limited personal jurisdiction of Michigan courts over nonresidents". The statement in *Sifers v Horen,* 385 Mich 195, 199; 188 NW2d 623 (1971), of that import was with reference to the subsection of the statute concerning "the transaction of any business" in this state:

"The courts of those states having 'long-arm' statutes similar to that of Michigan which confer, specifically, limited personal jurisdiction over defendants based on 'the *transaction of any business* within the state,' have generally construed their statutes as extending the state's jurisdiction to the farthest limits permitted by due process." (Emphasis supplied.)

The Michigan statute, in contrast with statutes or rules of other states (Cal Code Civ Proc, § 410.10; NJ Court Rules, R R 4:4-4[d]), does not contain a provision subjecting non-residents to jurisdiction to the fullest extent permissible under the Federal Constitution.

[3] *Hanson v Denckla,* 357 US 235, 253; 78 S Ct 1228; 2 L Ed 2d 1283 (1958).

ordinarily have "substantial connection"[4] or requisite minimum contacts with this state justifying the exercise of long-arm jurisdiction.

A manufacturer's marketing system is generally seen as a purposeful availment of the privilege of acting in a forum in which it has reason to know its products are distributed pursuant to that system.

The record in the instant case shows only that products of the Swiss manufacturer, Solis Apparatus Manufactories, Ltd., are sold by it to independent importers located in New York, Chicago and Los Angeles. It does not appear whether any Solis products are distributed beyond the states of New York, Illinois and California as part of Solis' marketing system, and there is no basis for an inference either that its products were in fact distributed in Michigan or that Solis had reason to know that its products were distributed in Michigan through the system established for marketing them in this country. Absent such evidence, Michigan is not a "fair forum"[5] although it is foreseeable that a purchaser in Illinois may be a Michigan resident or that an Illinois purchaser may bring or send the product to Michigan.

While the record does not support a finding that Solis purposefully availed itself of the privilege of conducting its activities in Michigan and that Michigan is a fair forum, it appears from other evidence not part of the record on appeal that Solis products have been extensively distributed in this state and that the failure of proof was inadvertent and so insubstantial, appraising it in light

[4] *McGee v International Life Ins Co,* 355 US 220, 223; 78 S Ct 199; 2 L Ed 2d 223 (1957).

[5] *Shaffer v Heitner,* 433 US 186, 215; 97 S Ct 2569; 53 L Ed 2d 683 (1977).

of the unsettled state of the jurisprudence, that the case should not on that account be dismissed.

I would remand to the trial court for further proceedings with leave to the plaintiff to adduce further proofs regarding the extent of Solis' availment of the privilege of conducting its activities in this state.

FITZGERALD, J., concurred with LEVIN, J.

RYAN, J. *(to reverse).* I agree with Justice LEVIN that a manufacturer's marketing system may generally be viewed as a purposeful availment of the privilege of acting in a forum in which it has reason to know its products are distributed pursuant to that system. And I agree that the record before us does not support a finding that the distribution system shown to be employed by defendant constituted such a purposeful availment.

However, I cannot countenance looking outside of the record to support a remand, in this instance, to allow plaintiff another opportunity to develop a factual record to support such a finding. Consequently, I would reverse the Court of Appeals.

COLEMAN, J., concurred with RYAN, J.

BLAIR MOODY, JR., J. *(to affirm).* This products liability action arose out of injuries sustained by the plaintiff, DeAnn Hapner, in Ann Arbor, Michigan, while using a portable hair dryer manufactured by the defendant, Solis, a Swiss corporation. The issue on appeal is whether the Court of Appeals, in holding Solis subject to the limited personal jurisdiction of a Michigan court, erred by exceeding the limits of constitutional due process. We conclude that the Court of Appeals did not err.

FACTS

In December, 1970, Benjamin Hapner purchased a portable "professional" hair dryer from his barber in Chicago as a present for his daughter DeAnn. DeAnn was then a high school senior living with her parents. As a college freshman, DeAnn took the hair dryer with her to the University of Michigan, Ann Arbor, in September of 1971. Several months later DeAnn noticed a noise in the dryer and took it home to Chicago for repairs. Subsequently, DeAnn brought the repaired hair dryer back to Ann Arbor, where, on January 28, 1972, she was injured by electrical shocks and was severely burned on both hands when the hair dryer came apart.

In February, 1973, plaintiffs filed suit in Michigan naming a Chicago distributor and an Illinois importer-wholesaler as defendants. Twenty months later, Solis, the Swiss manufacturer of the hair dryer, was added as a party defendant.

Solis moved for an accelerated judgment on the grounds that the Michigan court lacked personal jurisdiction over it and that such jurisdiction would violate Solis' constitutional right to due process under the Fourteenth Amendment to the United States Constitution. Solis' affidavit submitted in support of this motion recited, in part, the following facts:

1. Solis is incorporated under the laws of Switzerland and has its principal place of business in Glattbrugg, Switzerland.

2. Solis maintains no offices, telephones, or bank accounts in the United States.

3. Solis has no sales or service representatives, no employees or agents in the United States.

4. Solis does not own, use or possess any real or

tangible personal property situated within the United States.

5. Solis exports its products to the United States to three independent importers located in New York, Chicago and Los Angeles, but Solis does not control the business operations of its importers.

Acknowledging that the question before the court was a "very close one", the trial judge entered an accelerated judgment dismissing Solis from the case on the ground that Solis lacked the requisite minimum contacts with the state for a Michigan court to maintain jurisdiction without violating the defendant's right to due process of law. The Court of Appeals reversed and remanded. 71 Mich App 263; 247 NW2d 375 (1976). We granted leave to appeal. 399 Mich 882 (1977).

I

Statutory authority for limited in personam jurisdiction over nonresident defendants is provided for in MCL 600.715; MSA 27A.715, which states in part:

"The existence of any of the following relationships between a corporation or its agent and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise limited personal jurisdiction over such corporation and to enable such courts to render personal judgments against such corporation arising out of the act or acts which create any of the following relationships:

\* \* \*

"(2) The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort."

Based upon the broad language of the statute, a nonresident defendant who causes injury to occur

within this state may be subjected to the jurisdiction of Michigan courts without the defendant ever having been within the state boundaries.

In previous decisions, this Court has viewed the statute as an attempt by the Legislature to expand to its full potential limited personal jurisdiction of Michigan courts over nonresidents and, noting no constitutional problems, has liberally construed the statute. *Sifers v Horen,* 385 Mich 195; 188 NW2d 623 (1971); *Woods v Edgewater Amusement Park,* 381 Mich 559; 165 NW2d 12 (1969). Assuming the accuracy of plaintiffs' pleadings, defendant Solis did cause a consequence to occur in the state resulting in an action for tort and is subject to the limited jurisdiction of the statute.

Nevertheless, since the present controversy involves fewer contacts with Michigan than previously decided cases, this Court must examine the present facts within the context of the due process constitutional limitations established by the United States Supreme Court. Such analysis requires examination of three key cases involving in personam jurisdiction over nonresident defendants.

## II

The modern constitutional test for the assertion of personal jurisdiction over a nonresident defendant by a state court was first set forth in the case of *International Shoe Co v Washington,* 326 US 310; 66 S Ct 154; 90 L Ed 95 (1945). That case established the due process "minimum contacts" test. In order to subject a nonresident defendant to in personam jurisdiction, the defendant must have certain "minimum contacts" with the state such that the maintenance of suit does not offend traditional notions of fair play and substantial justice. Whether due process is satisfied depends upon the

quality and nature of the nonresident's activity in relation to the fair and orderly administration of the state's law. *International Shoe, supra,* 319. Thus, constitutional jurisdiction over a nonresident defendant requires not only fairness to the defendant, but also a consideration of the forum state's interest in the administration of its laws.

In *McGee v International Life Ins Co,* 355 US 220; 78 S Ct 199; 2 L Ed 2d 223 (1957), the United States Supreme Court reexamined the constitutional limitations placed upon in personam jurisdiction and found that one contact with a state was sufficient for purposes of due process. More than 20 years ago, Mr. Justice Black, writing for a unanimous Court, explained the policy considerations which required expansion of a state's power over a nonresident defendant:

"Looking back over this long history of litigation a trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents. In part this is attributable to the fundamental transformation of our national economy over the years. Today many commercial transactions touch two or more States and may involve parties separated by the full continent. With this increasing nationalization of commerce has come a great increase in the amount of business conducted by mail across state lines. At the same time modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity." *McGee, supra,* 222-223.

Additionally, that Court referred to the "manifest interest" of the state in providing a forum for its residents to seek effective redress.

The trilogy was completed less than a year after *McGee,* when the Supreme Court decided *Hanson*

*v Denckla,* 357 US 235; 78 S Ct 1228; 2 L Ed 2d 1283 (1958). Proceedings had been instituted in a Florida court to invalidate an inter vivos trust created by a Pennsylvania resident with a Delaware trust company. Under Florida law, the nonresident trustee was an indispensable party to the suit. Thus, the question presented was whether the Florida court could obtain valid in personam jurisdiction over the nonresident trustee. The majority opinion reasoned that Florida had no jurisdiction over the trustee:

"The cause of action in this case is not one that arises out of an act done or transaction consummated in the forum State. * * * [T]his action involves the validity of an agreement that was entered without any connection with the forum State.

\* \* \*

"The application of [the] rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson, supra,* 251-253.

*Hanson,* therefore, is viewed as a restrictive approach to state courts exercising jurisdiction over nonresident defendants. Under *Hanson,* the "minimum contact" established in *International Shoe* and *McGee* must be some act by which the nonresident defendant purposefully avails himself of the privilege of conducting activities within the forum state.

### III

To resolve the present controversy, we must decide how *International Shoe, McGee, Hanson*

and their progeny apply to a modern products liability case.[1] A conflict exists between legal scholars as to whether the *Hanson* case should be confined to its facts and is, therefore, inapplicable in products liability actions.[2]

However, even within a framework of utilizing *Hanson* in products liability cases, courts are split as to how *Hanson* applies.[3] The restrictive application of *Hanson* requires the manufacturer to have had control over the process through which its product reached the forum and the consumer. In the absence of solicitation, sale or delivery within the state of injury by the defendant to the plaintiff, jurisdiction over the nonresident manufacturer is denied.

*Hodge v The Sands Manufacturing Co,* 151 W Va 133; 150 SE2d 793 (1966), and *Moss v Winston-*

---

[1] Our research indicates that the due-process limitations of personal jurisdiction over nonresident manufacturers in product liability actions have not as yet been decided by the United States Supreme Court.

[2] See Currie, *The Growth of the Long Arm: Eight Years of Extended Jurisdiction in Illinois,* 1963 U Ill L Forum 533; Leflar, *Conflict of Laws,* 34 NYU L Rev 20 (1959).

[3] See Anno: *Products Liability: In Personam Jurisdiction Over Nonresident Manufacturer,* 19 ALR3d 13; Anno: *Construction and Application of State Statutes or Rules of Court Predicating In Personam Jurisdiction Over Nonresidents or Foreign Corporations on the Commission of a Tort Within the State,* 24 ALR3d 532.

As noted, additional confusion is created by variance in statutory language and in courts' interpretations of when a particular tort action accrues. Some jurisdictions hold that the tortious act in a product liability case occurs in the manufacturing process and, thus, the action accrues in the jurisdiction where manufactured. See, for example, *Feathers v McLucas,* one of the cases decided in *Longines-Wittnauer Watch Co v Barnes & Reinecke, Inc,* 15 NY2d 443; 261 NYS2d 8; 209 NE2d 68 (1965). A number of jurisdictions invoke the traditional choice of law rule that the place of the wrong is where the last event takes place which is necessary to render the actor liable. See, for example, *Gray v American Radiator & Standard Sanitary Corp,* 22 Ill 2d 432; 176 NE2d 761 (1961).

Michigan follows the Illinois view that a tort action accrues when the last element necessary to state the cause of action occurs. *Connelly v Paul Ruddy's Equipment Repair & Service Co,* 388 Mich 146; 200 NW2d 70 (1972); *Coury v General Motors Corp,* 376 Mich 248; 137 NW2d 134 (1965).

*Salem,* 254 NC 480; 119 SE2d 445 (1961), are cases
which typify this narrow approach. In both cases,
the defendant nonresident manufacturers distrib-
uted their products through independent middle-
men. Therefore, while not specifically stating a
privity requirement, these cases impliedly read
*Hanson* to require privity of contract between the
manufacturer and the consumer.

This application of *Hanson* ignores the obvious
complexity of commercial transactions in today's
product-oriented consumer market. The presence
of a product within a particular forum cannot
always result from direct shipment by the manu-
facturer. The movement of products may be ac-
complished by the consumer, by independent mid-
dlemen, or may have resulted from distribution by
a second or third manufacturer who purchased
defendant's product as a component for its goods.
If a manufacturer could avoid personal jurisdiction
in products liability actions whenever the distribu-
tion of its product is handled by independent
middlemen or distributors, manufacturers would
obviously be able to completely avoid the conse-
quences of placing defective products in the stream
of commerce. Nonresident manufacturers should
not be permitted to use circuitous distribution
channels to avoid defending actions brought to
recover for injuries allegedly caused by their prod-
ucts. *Alliance Clothing Ltd v Denver Dist Court,*
187 Colo 400; 532 P2d 351 (1975).

The present case provides an excellent example
of the lack of fairness and substantial justice
which would result from such an approach. Solis'
affidavit submitted to the trial court maintains
that Solis has no contacts with the United States.
Based upon this affidavit, Solis could contest juris-
diction anywhere in the United States, despite the

fact that Solis imposes no territorial restrictions over the three independent distributors who nationally advertise Solis' product and distribute the hair dryer to beauticians and barbers throughout the country for professional use and retail sale.

The better application of *Hanson,* and that which we adopt today, sustains jurisdiction over a nonresident manufacturer in the state where the injury occurs whenever that manufacturer places its product in the stream of national or international commerce and could reasonably foresee that the product will enter the forum state. As articulated by the California Supreme Court in *Buckeye Boiler Co v Los Angeles Superior Court,* 71 Cal 2d 893; 80 Cal Rptr 113; 458 P2d 57 (1969), this application of *Hanson* in products liability cases focuses on the economic reality of manufacturing enterprises, rather than on the outward form of business transactions.

> "A manufacturer's economic relationship with a state does not necessarily differ in substance, nor should its amenability to jurisdiction necessarily differ, depending upon whether it deals directly or indirectly with residents of the state.
>
> * * *
>
> "A manufacturer whose products pass through the hands of one or more middlemen before reaching their ultimate users cannot disclaim responsibility for the total distribution pattern of the products. If the manufacturer sells its products in circumstances such that it knows or should reasonably anticipate that they will ultimately be resold in a particular state, it should be held to have purposefully availed itself of the market for its products in that state.
>
> * * *
>
> "When a plaintiff is allegedly injured in the forum state by a defect in a nonresident manufacturer's product, the question whether that product's use or pur-

chase was an isolated instance or part of a continuous course of business in the state is relevant but not necessarily decisive in determining the existence or nonexistence of the requisite jurisdictional activity. Only if isolated use or purchase conclusively establishes lack of foreseeability that the product will enter the state is the isolation necessarily fatal to jurisdiction over the manufacturer; in that event there is a manifest lack of purposeful activity on the part of the manufacturer." *Buckeye, supra,* 902-904. (Citations omitted.)

Therefore, within this analysis, placement of the product into the stream of commerce and reasonable foreseeability that the product will enter the forum state are two factors to be examined by a court in determining whether a nonresident manufacturer has engaged in purposeful activity under *Hanson* and is thus subject to limited personal jurisdiction.

Application of one or both of these factors can be found in the following cases which subjected alien and native nonresident manufacturers to personal jurisdiction. For jurisdiction over alien corporations see: *Alliance Clothing Ltd, supra; Certisimo v Heidelberg Co,* 122 NJ Super 1; 298 A2d 298 (1972), *aff'd sub nom Van Eeuwen v Heidelberg Eastern, Inc,* 124 NJ Super 251; 306 A2d 79 (1973); *Shoei Kako Co v San Francisco Superior Court,* 33 Cal App 3d 808; 109 Cal Rptr 402 (1973); *Deutsch v West Coast Machinery Co,* 80 Wash 2d 707; 497 P2d 1311 (1972).

For jurisdiction over native nonresident corporations see: *Duignan v A H Robins Co,* 98 Idaho 134; 559 P2d 750 (1977); *Edmundson v Miley Trailer Co,* 211 NW2d 269 (Iowa, 1973); *Smith v Temco, Inc,* 252 So 2d 212 (Miss, 1971); *Metal-Matic, Inc v Eighth Judicial Dist Court,* 82 Nev 263; 415 P2d 617 (1966); *Ehlers v US Heating & Cooling Manu-*

*facturing Corp,* 267 Minn 56; 124 NW2d 824 (1963); and the landmark case of *Gray v American Radiator & Standard Sanitary Corp,* 22 Ill 2d 432; 176 NE2d 761 (1961).

Having adopted the two-factor (stream of commerce-foreseeability) analysis, we must now apply these factors to the instant case. The product in question is a hair dryer which is mass-produced in Switzerland for distribution and sale in international commerce and for diffuse distribution in the United States by three independent importers located in California, New York and Illinois. Clearly, Solis placed its product into the broad stream of commerce. The only question remaining is whether Solis could reasonably foresee that its product would be used in Michigan.

In determining reasonable foreseeability on the part of a manufacturer, the nature of the defective product and the volume of distribution can be used as yardsticks of foreseeability. The defective product in the present case is a portable hair dryer. Residents of the United States are extremely mobile in occupational, educational and recreational activities. Therefore, a portable hair dryer, like an electric razor or other personal grooming equipment, foreseeably crosses state borders as a normal part of the individual consumer's life style.

Defendant Solis placed this portable hair dryer in the national stream of commerce and reasonably and fairly could foresee the ultimate use of this product in Michigan or any other state. Traditional notions of fundamental fairness and substantial justice are not offended by subjecting the present defendant to the limited personal jurisdiction of a Michigan court.[4]

_____

[4] One of the principal arguments against assuming personal jurisdiction over alien corporations is that the court, by forcing a defend-

Furthermore, public policy dictates the result reached in this case. In upholding jurisdiction over a Japanese pipe manufacturer, the Washington Court of Appeals stated:

"[W]e believe that foreseeability that the product could be used in the forum state is the most important factor in products liability cases. * * * With the breakdown in international commercial barriers, and the resulting fact that a substantial portion of goods sold to American consumers today is manufactured in foreign lands, we would be striking a serious blow at consumer protection if we did not recognize such jurisdiction. We cannot expect consumers in this state to travel to Japan and other parts of the world to litigate injuries from tortious acts committed in this state—fairness to the foreign manufacturer does not require that hardship to local consumers." *Omstead v Brader Heaters, Inc,* 5 Wash App 258, 271-272; 487 P2d 234, 242-243 (1971), *aff'd* 80 Wash 2d 720; 497 P2d 1310 (1972). (Opinion of the Court of Appeals adopted as opinion of the Supreme Court.)

CONCLUSION

Accordingly, we hold that when a nonresident manufacturer places its product in the stream of national or international commerce and can reasonably foresee that the product will enter the forum state, an injury in Michigan resulting from a product's intended use provides a sufficient contact with the state to assert jurisdiction over the

---

ant to bear the burden of litigating abroad in a strange forum, violates fundamental concepts of fairness. See Note, *Jurisdiction Over Alien Manufacturers in Product Liability Actions,* 18 Wayne L Rev 1585 (1972). This burden is substantially lessened by MCL 600.741; MSA 27A.741, which provides that in cases where limited personal jurisdiction is involved, on defendant's motion, the court must require the plaintiff to post a bond as security for court costs and actual expenses of the defendant incurred in defending the action (excluding attorney's fees).

manufacturer without offending any notions of fair play and substantial justice.[5]

The Court of Appeals decision that due process is not violated by a Michigan court maintaining limited personal jurisdiction over the defendant is affirmed and this cause is remanded to the trial court. Costs to plaintiffs-appellees.

Kavanagh, C.J., and Williams, J., concurred with Blair Moody, Jr., J.

---

[5] To the extent that this holding is contrary to language set forth in *Moyses v Spartan Asphalt Paving Co,* 383 Mich 314; 174 NW2d 797 (1970), that language alone is overruled.